## CIRCUIT COURT OF BALTIMORE CITY.

Filed March 30, 1911.

IN THE MATTER OF THE DISSOLUTION OF THE UNITED SURETY COMPANY.

*Edwin J. Farber, George R. Gaither* and *Ritchie & Janney* for United Surety Company.

*Washington Bowie, Jr.,* and *Edgar H. Gans* for Fidelity and Deposit Company.

*John Philip Hill,* United States District Attorney, for United States.

*J. Kemp Bartlett* for United States Fidelity and Guaranty Company.

HEUISLER, J. (Orally)—

Gentlemen, I am prepared to announce my conclusion in the matter of the dissolution of the United Surety Company.

The bill in this case was filed voluntarily by the United Surety Company of Baltimore City, asking for the dissolution of the corporation. The bill was filed pursuant to the provisions of Sections 51 and 52 of Article 23 of the Code, which provides:

"Every corporation of this State other than a public service corporation, may, by the affirmative vote of a majority of all of its members, or of a majority of all of its stock (or if two or more classes of stock have been issued, of a majority of each class) outstanding and entitled to vote, close its affairs and authorize a bill for its dissolution to be filed in the manner hereinafter set forth."

Under further provisions of the law, there was filed with the bill of complaint, a statement of the full and complete assets of the corporation, together with a list of its stockholders and their addresses, and also a statement purporting to set out the certain and ascertained creditors.

It was also alleged in the bill that the company was entirely solvent, but unable because of an admitted impairment of capital stock, and a consequent inhibition on the part of the Insurance Commissioner of Maryland, to further continue its active business. The notice provided by the law was accordingly given, directing that any one interested should on or before a day certain therein named show cause why the prayer of the bill should not be granted. The Fidelity and Deposit Company of Maryland, the United States Fidelity and Guaranty Company of Baltimore City, The American Bonding Company of Baltimore City and the United States of America, by petition or answer, did protest the dissolution of the applicant company, alleging in substance that, being solvent it could not invoke the provisions of the law of Maryland relating to voluntary dissolution because of the fact that its list of creditors did not fairly and truly represent those whose claims should be properly considered before the assets of the company could be applied to a final liquidation of its affairs, and asserting that it was legally responsible for the settle-

ment of a certain class of character of indebtedness, of a contingent nature, which must be provided for before the dissolution could be had.

The status of the corporation as contended in these several petitions or answers may be summarized as follows:

A. It had made voluntary application under the provisions of the act.

B. It had alleged its entire solvency.

C. It had submitted a class of certain and ascertained creditors, all of which was a proper compliance with the provisions of the law, but, it had omitted the entire class.

D. Of contingent liabilities for which it was largely responsible, and that unless insolvency was charged and shown as the reason for dissolution, no decree was proper to be passed, because the dissolution could not change or impair the outstanding contingent contracts.

The business of the company extended over a large section of the country as well as locally and in the testimony taken, it was shown that in the State of South Carolina, which is the typical character of its business elsewhere, the bonds issued by the company could be described under a broad division as "judicial contract, public. official government bonds, government official bonds, and fidelity bonds for employes." as distinguished from casualty bonds, which are known as accident, burglary, or plate glass risks. (Testimony of Edwin W. Poe, folio 39.)

It was also shown that certain of the bonds, such as those known as judicial, could not be cancelled or withdrawn at all, but must be allowed to run to the full length of their official life, that the fidelity bonds contained a provision that the employer had six months within which to discover the defalcation, and three months thereafter within which to bring suit thereon.

The provisions of the statute are very clear, but the difficulty in the case lies in the application of those provisions to the facts in the case. The applicant corporation alleges its entire solvency and complete inability to meet its obligations, and still its officials testify that it most certainly has assumed contingent liabilities; that it has become guarantor and surety on future liabilities; that it has entered into the re-insurance contracts for a valuable consideration, and that it has absolutely made no provision to care for the ultimate liability which may follow these undertakings.

In reply it contends that the act of dissolution, as such, does not change the position of its creditors; that the fact of contingent liabilities does not make those who may profit thereunder creditors of the company; that reinsurance can be effected by all those who may thus be situated, and that if the official life of the company is terminated, such parties must seek such protection as the exigencies of the case suggest. The company is willing to surrender its franchise to the State, and asks its acceptance, because it can discharge all its present and discoverable liability and have a surplus over even beyond the full claims of its stockholders.

It is urged that the doctrine announced in the Casualty Insurance Company's case, in 82nd Maryland 572, is applicable to the facts of this proceeding: The court there did say: "There must of necessity be many outstanding and unascertained claims pending against holders of the company's policies, but claims may require some time for adjustment; but it is of great importance that the company's assets should be distributed at as early a day as practicable, and hence the settlement of its affairs ought not to be postponed to await the determination of every contingency on which its policy engagements are suspended."

But the difference in the two cases is so palpable that the application fails. A casualty business alone, as in the 82nd Maryland case, is not the business of the applicant company. Casualty risks can be promptly handled.

If the loss has occurred it can be provided for; if the loss has not occurred new casualty insurance can be readily affected by the assured, and the question of unearned premiums adjusted; but judicial bonds, fidelity bonds, contracts bonds, custom and other government bonds, that being the admitted business of the United Surety Company, are not in many instances susceptible of cancellation at all, but remain effective during their official life, and in other instances cannot be provided

132

for by adequate re-insurance processes until after much time is expended and additional expense incurred.

It is contended, and, perhaps, fairly so, that the principal obligors may be esteemed entirely able to take care of these various funds, but is it entirely equitable to force the obligee to take that chance? If the obligee is made to take that position now, it could have been done originally without necessity of any bond.

It is urged that under the receivership proceedings in the case of Bowles et al. vs. the applicant company, a separate proceeding, that all the outstanding contracts of judicial, fidelity, contract and other insurance, have been rescinded and that the interested parties must now re-insure.

But that contention is unsound, because the receivership proceeding is only a caretaking one, and the application for dissolution is made sua sponte by a perfectly solvent corporation, willing and anxious to pay its debts and retire from business. If this company is solvent and can arrange to pay all its debts and obligations, then under the law it is entitled to a decree of dissolution, and its stockholders should receive all the surplus. But if it has outstanding legal obligations which it has made no provision to settle and adjust, if it has sent its obligations out into the commercial world, it must pay or adjust them before any rights of its stockholders can be at all considered. This is the gravely important aspect of the case adverted to in the argument, and it cannot be gainsaid.

It may be urged that the ultimate distribution of its assets, and not its corporate existence, is alone affected by this consideration, but this contention should not be permitted to prevail until it is definitely determined how far the fact of dissolution, as such, may legally embarrass the claims unascertained and contingent claimants.

It is alleged that dissolution does not break or abridge any contracts of the company. That may or may not be so, but it is a fact more easily susceptible of entertainment while the corporate entity subsists, and the time for speculation in the matter is not at hand.

The position of the protesting parties in interest does not appear to be shaken by legal authority or by the testimony relative to the facts given in this case. It is manifest that the integrity of the general surety business is affected by this proceeding; it is not overstated in the argument that this is a question of general justice and fundamental right and wrong. The conclusion is inevitable that the proper proceeding is to refuse the application for a decree of dissolution and to dismiss the bill with costs, and an order will be signed accordingly.